Sucesores de Oliva y Ca. *v.* J. Matienzo y Ca.

Apelación procedente de la Corte de Distrito de San Juan, Sección 1ª.

No. 116.—Resuelto en diciembre 12, 1907.

Apelación—Decisión no Justificada por la Prueba.—La cuestión de que la decisión no está justificada por la prueba practicada en el juicio, no puede ser

considerada en una apelación, si ésta no se hubiera interpuesto dentro de los quince días después de dictada la sentencia.

CONTRATO—INDEMNIZACIÓN POR SU INCUMPLIMIENTO.—Al estimar los daños y perjuicios ocasionados por el incumplimiento de un contrato de duración continuada, como para la entrega de cierta cantidad de leche diaria, el tribunal no debe apreciar los daños y perjuicios que puedan ocasionarse en lo futuro, es decir, entre el día en que se *presentara la demanda* y aquél en que se haya fijado como vencimiento del contrato, pues no es posible afirmar que el incumplimiento haya de subsistir, ó que no pueda ocurrir algún accidente inevitable suficiente á excusar la falta de cumplimiento; la indemnización debe, pues, limitarse á los perjuicios ocasionados hasta la fecha de la presentación de la demanda.

ID.—NUEVA CAUSA DE ACCIÓN POR EL INCUMPLIMIENTO SUBSIGUIENTE.—De acuerdo con la doctrina expuesta en el párrafo anterior, el demandante tiene derecho á entablar una nueva acción por los daños que puedan habérsele ocasionados después de la fecha de la presentación de la demanda.

Los hechos están expresados en la opinión.

Abogados de los apelantes: *Sres. Sarmiento y López Landrón.*

Abogado de los apelados: *Sr. Mott.*

EL JUEZ ASOCIADO SR. MACLEARY, emitió la opinión del tribunal.

La presente es una apelación interpuesta contra sentencia dictada por el Tribunal de Distrito de San Juan, en su sección 1ª., el día 15 de octubre de 1906. La demanda fué entablada en cobro de daños y perjuicios reclamados por incumplimiento de un contrato. Se alega que los demandados J. Matienzo y Ca., y J. Matienzo, individualmente, celebraron un convenio con los demandantes, Sucesores de Olivas y Ca., por cuyo convenio los demandados se comprometieron á entregar diariamente á los demandantes doscientos cuartillos de leche, por la que habían de recibir, como pago, cinco centavos y medio por cuartillo, ó sean once dollars diariamente. Se alegan otros pormenores referentes al contrato, y al incumplimiento del mismo por no haberse efectuado la entrega de la leche, así como relativos á los daños y perjuicios reclamados por dos años, á razon de $4 por día, ó sean $2,920 por todo el período indicado. El abogado de los apelados sostiene que el recurso de apelación interpuesto por J. Matienzo, en

su capacidad individual, debe ser desestimado, por no haber comparecido dicho Matienzo, ni presentado su alegato en este tribunal dentro del término fijado por la ley. Puesto que la sentencia dictada por el tribunal inferior era á su favor, la desestimación de su recurso de apelación no podría tener ningun efecto práctico; pero como este tribunal desea cumplir con su propio Reglamento, no se considerará el recurso interpuesto por J. Matienzo, individualmente, y puede considerarse virtualmente desestimada dicha apelación; debiéndose dictar una orden á ese efecto. El abogado de los apelados sostiene en su informe que por cuanto esta apelación fué interpuesta contra la sentencia, y quince días después de haber sido dictada la misma, este tribunal no puede investigar la prueba y resolver si la decisión está sostenida ó no por ella; pero que tal como han sido presentados los autos ante este Tribunal, éste está limitado á investigar si la sentencia es consistente ó nó con los hechos probados.

En apoyo de este punto, el abogado cita la sección 295 del Código de Enjuiciamiento Civil. Esta sección del Código, en el 1er. párrafo de la misma, dice:

"* * * Pero una excepción á la decisión ó veredicto de un jurado, fundada en que está en desacuerdo con la prueba, no podrá revisarse, por virtud de apelación contra la sentencia, á menos que se interponga dentro de los quince días después de dictada dicha sentencia."

Debemos aceptar este parecer, é interpretar así la citada sección. Habiendo establecido la apelación contra la sentencia, el tribunal de apelación solamente puede revisar la ley pertinente al caso y no la prueba sobre la cual se ha basado la decisión. Esta ha sido la práctica de esta corte, siempre que la cuestión se ha presentado á su consideración desde la adopción del Código de Enjuiciamiento Civil, en 1º. de julio de 1902; y no creemos que sea necesario alterarla ahora. Véase el caso de *Román* v. *American Railroad Co. of Porto Rico,* resuelto en 29 de enero de 1906; 3 Decisiones de Puerto Rico,

páginas 31, 32 y siguientes, y *Maisonave* v. *Maisonave*, resuelto en 5 diciembre, 1907.    Esta interpretación puede no ajustarse ó estar de acuerdo con. alguna de las resoluciones de las cortes de apelación en los diferentes Estados de la Unión, pero está de acuerdo con las reglas establecidas en California, por la Corte Suprema de aquel Estado, al interpretar, un estatuto muy semejante á éste.    Sección 939 Código de Enjuiciamiento Civil de California.

*Clark* v. *Gridly,* 49 Cal., 108.

*Handley* v. *Figg,* 58 Cal., 580.

*Coonan* v. *Lowenthal,* 129 Cal., 201.

*Ryland* v. *Heney,* 130 Cal., 429.

La opinión del juez de distrito que conoció del caso que comprende los hechos probados y consideraciones legales, las cuales él creyó adecuadas y pertinentes para la resolución del caso, es como sigue:

''Para llegar á una resolución final en este pleito, la corte ha tenido mucho cuidado al apreciar la prueba toda y especialmente la testifical, tomando en consideración la mayor ó menor seguridad al declarar cada testigo, las vacilaciones y dudas de algunos, el interés que pudiera tener al deponer, si sus manifestaciones fueron contradichas por actos ó palabras suyas, y en resumen, cree haber aquilatado el valor de todas ellas, y como consecuencia de toda la prueba y de las argumentaciones de los abogados, llega la corte á las siguientes conclusiones:

I. Que en la noche del cinco ó seis de octubre de 1905, y en el café ''La Mallorquina,'' propiedad de los demandantes, éstos, ante varios testigos, llegaron á un acuerdo con Don Joaquín Matienzo, como representante de J. Matienzo y Ca., sobre los siguientes extremos, únicos que se trataron:

(*a*) J. Matienzo y Ca. se comprometieron á entregar diariamente á Sucesores de Olivas y Ca., y estos á recibir, doscientos cuartillos de leche de vaca pura.

(*b*) El precio de tal compra-venta sería el de cinco centavos y medio por cuartillo.

(*c*) La entrega sería de los doscientos cuartillos de leche, de cinco á seis de la mañana, en "La Mallorquina."

(*d*) El contrato duraría dos años, avisando ocho días antes de comenzar á cumplirlos.

II. Cuando lo anterior fué convenido, fué celebrado por los contratantes y testigos tomando champagne en satisfacción de haber llegado á un acuerdo los primeros, toda vez que había sido muy discutido el precio.

III. Cuando tal convenio verbal tuvo efecto, los Sres. J. Matienzo y Ca., no tenían aun la vaquería que pensaban comprar; pero en los últimos días de octubre los Sres. de la Haba y Don Joaquín Matienzo, de la firma social demandada, avisaron á Don Paulino Pumarada, socio de la demandante, haber realizado la compra de las vacas necesarias.

IV. No aparece debidamente justificado que cuando se hizo el trato de palabras consignado en el número 1, Don Joaquín Matienzo hiciera reserva alguna ó advertencia al socio Pumarada con quien contrató por la social demandante, de que él no pudiera contratar, y que necesitara la aprobación del otro socio Sr. de la Haba.

V. En primero de noviembre siguiente J. Matienzo y Ca. dirigieron una carta escrita y firmada por Don Joaquín Matienzo, á nombre de la sociedad, á los demandantes, en que ratificaron el convenio celebrado por Don Joaquín Matienzo y los demandantes.

VI. Aún cuando en el convenio verbal nada se estipuló respecto á dar forma escrita al convenio, sin embargo, ya por los días de la carta de primero de noviembre, á instancia de J. Matienzo y Ca., trataban las partes de este pleito de hacer un documento privado sobre el particular.

VII. A la carta de primero de noviembre contestó con otra Sucesores de Oliva y Ca., congratulándose de que estuvieran dispuestos á cumplir lo convenido; consignó cuáles eran las estipulaciones verbales, ó sea las que antes se han expresado,

y además, les participaba que desde el día diez de ese mes estaba pronto á recibir la leche convenida.

A esta carta nada contestó J. Matienzo y Ca.; alega Don Joaquín Matienzo que él la recibió y la rompió, sin dar cuenta de ella á su socio Sr. de la Haba, á quien nada dijo hasta mucho tiempo después.

VIII. En diez de noviembre la sociedad demandada entregó á la demandante los doscientos cuartillos de leche, pero esa misma tarde la primera envió á la segunda, quien la recibió, una carta en que le participaba que en adelante no le enviaría más la leche porque parte de ella la habían vendido fuera de "La Mallorquina."

IX. Uno de los extremos discutidos, aunque brevemente en la entrevista que dió margen al convenio verbal, fué que los demandantes querían recibir la leche en dos ocasiones, por la mañana y por la tarde, pero ante la negativa de los demandados cedió pronto la demandante y aceptó que toda fuera por la mañana.

X. Que recibiendo toda la leche por la mañana los demandantes, y ante el temor de que no le sirviera para por la noche en su café, concertó con Bird, Rosales y Fabián que les tomaran ciento veinte cuartillos por la mañana al mismo precio de cinco centavos y medio que compraba y que por la tarde se la devolvieran, abonándoles un centavo por cuartillo de los que le devolvían. Así de los doscientos cuartillos, se quedaba el demandante con solo ochenta para el consumo de la mañana.

XI. Al comunicar el día diez de noviembre la sociedad demandada á la demandante que el once ya no le enviaría la leche, se vió ésta precisada á comprarla en distintos puestos de esta ciudad, á precio superior, á siete centavos y medio, hasta que el día 16 ó 17 de noviembre pudo convenir con Bird, Rosales y Fabián que le suministraran toda la que necesitaban, á razón de siete y medio centavos el cuartillo, durante dos años.

XII. Los actos y contratos realizados por Don Joaquín Matienzo no lo fueron por su derecho propio, sino á nombre de J. Matienzo y Ca., sociedad civil agrícola que, aunque con la forma de las sociedades, usaba el nombre del comanditario y no del socio gestor Don Alberto de la Haba.

### PUNTOS DE DERECHO.

1°. El convenio celebrado el cinco ó seis de octubre de 1905 en el café "La Mallorquina" entre las sociedades litigantes, fué un contrato, porque reunió los tres requisitos que para que exista exige el artículo 1228 del Código Civil.

2°. Al celebrar ese contrato Don Paulino Pumarada, en nombre de los demandantes, con Don Joaquín Matienzo, contrató con la sociedad J. Matienzo y Ca., no tan sólo porque no se ha probado que éste hiciera constar que no podía obligar á la sociedad por ser un comanditario, sino porque figurando en la firma social de los demandados el nombre de Joaquín Matienzo, legalmente, con arreglo al Código de Comercio, tenían derecho á estimarlo como el socio colectivo con facultad para obligar. Y esto sin tener en cuenta que cuanto él estipuló aquella noche fué ratificado en carta de primero de noviembre, suscrita cón dicha firma social.

3°. No habiéndose justificado de una manera cumplida que cuando en diez de noviembre la sociedad demandada hizo la primera entrega de leche, fuera ante la esperanza de poder celebrar un contrato escrito distinto en algunos extremos á lo que se convino en la noche del cinco al seis de octubre, parece lo lógico y racional admitir que tal primera entrega de leche y las sucesivas que habían de hacerse, fué la ejecución del contrato verbal.

4°. Aún cuando tal convenio fué primeramente verbal, sin embargo, la carta de primero de noviembre lo convirtió en escrito, al ratificar cuanto había tratado el Sr. Don Joaquín Matienzo, y mucho más la carta del día siguiente de Sucesores de Oliva y Ca.. en que recordaba cuáles eran las estipula-

ciones habidas, carta ésta que no fué contestada, negando la certeza de las cláusulas del convenio.

5°. Los contratos se perfeccionan por el simple consentimiento, cuando además, hay objeto cierto que sea materia del contrato y causa de la obligación que se establezca, porque de cualquiera manera que el hombre quiera obligarse, queda obligado, y son obligatorios cualquiera que sea su forma, sin que dejen de ser contratos eficaces por no haberse reducido á escrito, pudiendo, no obstante, compelerse las partes á darles tal forma cuando sea necesario para llevar á término la obligación ó perjudicar á terceros, y así lo tiene resuelto el Tribunal Supremo de España en su sentencia de 17 de abril de 1897 de una manera vacilante, pero luego, ya resueltamente, en las posteriores de 4 de julio de 1899, 1°. de julio y 19 de octubre de 1901.

6°. El que faltare al cumplimiento de sus contratos está obligado á indemnizar daños y perjuicios, que comprenden, no sólo el valor de la pérdida que haya sufrido, sino también la ganancia que haya dejado de obtenerse, y, con arreglo á este precepto, han de ser indemnizados los perjuicios que hayan sufrido los demandantes, quienes han aportado prueba de las pérdidas que sufren.

7°. Como el contrato era por dos años, ó sea 730 días, y por doscientos cuartillos á cinco centavos y medio cada uno, resulta que hubieran tenido los demandantes que pagar á J. Matienzo y Ca. once pesos diarios, y la que compran actualmente, costándole á siete centavos, da un resultado de catorce pesos diarios, ó sea una diferencia diaria de más en contra ó perjuicio de los demandantes, de tres dollars diarios, y, al cabo de los dos años, de $2,010. Más como de los doscientos cuartillos que recibían de J. Matienzo y Ca., entregaban ciento veinte cuartillos á Bird, Rosales y Fabián, para que luego éstos se los devolvieran por la tarde, dándoles un centavo de ganancia por cuartillo, resultan ciento veinte centavos diarios menos de perjuicio, que, en los dos años, son $804, cantidad que rebajada de los dos mil diez dollars, dan un

saldo de un mil doscientos seis dollars, que es la cantidad en que resulta perjudicada la sociedad demandante.

8°. Con arreglo al Código Civil vigente, no existen los daños ejemplares, ó sea la obligación de pagar á más de los perjuicios de que antes se ha hecho mención, otra cantidad como castigo.''

Debemos aceptar los hechos, según han sido declarados probados por la Corte de Distrito. ¿Son entonces las conclusiones de derecho basadas en los hechos probados correctas, y está justificada la sentencia por los hechos y por la ley, según se ha expresado por la corte inferior en su opinión y en la sentencia dictada? No seguiremos en esta discusión los puntos de ley expuestos por la corte inferior en la opinión que se encuentra en los autos; sino más bien las cuestiones presentadas por el abogado de los apelantes y el de los apelados á nuestra consideración.

Según el caso ha sido presentado en estos autos, debemos considerar como resuelto por la corte inferior que existió un contrato entre los apelantes y los apelados para la compra y venta de leche; y que se hizo por escrito, con motivo de las cartas que se cruzaron entre las partes. Resulta, además, de los autos, según han sido presentados, que este contrato fué infringido por J. Matienzo y Ca., con motivo de no haber entregado la leche después de la primera entrega diaria, que hizo en 10 de noviembre de 1905.

Consideramos innecesario resolver el punto de si el contrato tenía que ser por escrito ó no, para establecer su eficacia y su fuerza obligatoria; puesto que la corte inferior ha resuelto que dicho contrato fué por escrito, y aceptamos esa resolución como final en esta apelación, según ha sido presentada. También es evidente desde este punto de vista del caso que el incumplimiento del contrato para la entrega de leche, en el cual se basa esta acción, causó daños y perjuicios á los apelados y debemos revisar los hechos declarados probados por la corte con el objeto de determinar la cuantía.

Por el contrato, los demandados estaban obligados á entregar á los demandantes doscientos cuartillos de leche diariamente por el período de dos años, empezando el día 10 de noviembre de 1905. Los demandantes se obligaban á pagar por esta leche á los demandados cinco centavos y medio por cuartillo ú once dollars diarios por los doscientos cuartillos que habían de entregarse. Los demandados entregaron solamente una vez la leche, de acuerdo con el contrato, siendo esta entrega de doscientos cuartillos en 19 de noviembre siguiente, alegando como razón de tal negativa, que los demandantes "habían vendido parte de la leche fuera de "La Mallorquina;" ese era el café que tenían los demandantes. No se entregó la leche en los restantes setecientos veinte y nueve días que faltaban para completar el término de dos años, estando, por consiguiente, los demandantes obligados á hacer otro contrato para el abastecimiento de leche á un precio superior de siete centavos y medio por cuartillo. Esto debe presumirse que fué por dos entregas diarias, como lo exigía el negocio de los demandantes. Esto fué declarado como un hecho probado por el tribunal inferior, y no se ha discutido. Por consiguiente, los daños y perjuicios causados por dejar de entregar los doscientos cuartillos de leche ascienden á dos centavos por cuartillo, ó cuatro dollars diarios. Pero los demandantes no podían hacer uso de toda la leche que se les entregaba solamente por la mañana, entre las horas de las cinco y las seis, porque probablemente antes de la noche ya estaría dañada, por lo que ellos convinieron con otro cambiar con él ciento veinte cuartillos de leche diariamente, tomando esa cantidad de leche por la mañana y devolviéndosela por la noche, pagando los demandantes, por este cambio, un centavo por cuartillo, ó un dollar veinte centavos diarios. Deduciendo esta suma de los cuatro dollars, según debemos hacer para llegar á un cálculo exacto de los daños y perjuicios sufridos por los demandantes, esa suma queda reducida á ($2.80) dos dollars ochenta centavos por día.

La otra cuestión que se presenta para ser resuelta por este tribunal, es el punto de por cuantos días deben estos daños y perjuicios ser calculados. La corte inferior incluyó los dos años con excepción del día en que fué entregada la leche, y dictó sentencia por la suma de ($2,010) dos mil diez dollars.

Creemos que al estimar ó calcular los daños y perjuicios, con arreglo á un contrato permanente como éste, por el incumplimiento diario que ocurra, la corte no debió haber tomado en consideración los que pudieran sobrevenir, sino los ya causados, pues nadie podría decir con seguridad que el incumplimiento diario continuaría, ó que el precio de la leche en el mercado se sostendría en un precio mayor que el determinado en el contrato, ó que algún accidente ó acontecimiento inevitable podría ocurrir, por el cual se impediría el cumplimiento del contrato, excusando á los demandados del cumplimiento del mismo. Por consiguiente, los daños y perjuicios no debieron haber sido calculados después de la fecha en que se dictó la sentencia, á saber: 15 octubre, 1906.

Pero tenemos que resolver que el importe de la sentencia debe estar limitado al incumplimiento ocurrido hasta el día de la presentación de la demanda, cuya fecha, aunque no aparece claramente de los autos, no puede ser posterior al 24 de abril, 1906, ó sea (165) ciento sesenta y cinco días. Todas las autoridades, según hemos podido ver en los casos resueltos, están de acuerdo con esta opinión, y debemos seguir sus opiniones.

Puede hacerse referencia al siguiente extracto de una opinión de la Corte de Apelaciones del Distrito de Columbia, á saber:

"Una acción establecida en reclamación de daños y perjuicios por incumplimiento de un contrato en el que se estipulaba el pago de una suma de dinero en plazos, procederá solamente en cuanto á los plazos vencidos en la época de la presentación de la demanda, no pudiendo ser incluídos en la reclamación los plazos subsiguientes que se venzan después de establecida la acción, ó de algún otro modo calculados en la reclamación del demandante, de modo que sirva para sostener la ju-

risdicción de la corte, ó para justificar el pronunciamiento de una sentencia por el total de la cantidad reclamada."

(*Mansfield* v.*Winter,* 10 App. Cases D. C. 549, citando 145 U. S., 224; que cita á la vez el mismo tomo, página 123.)

De acuerdo con esta regla, los daños y perjuicios sufridos por los demandantes por culpa de los demandados, con motivo del incumplimiento del contrato que es objeto de esta acción, deben calcularse á razón de ($2.80) dos dollars y ochenta centavos por día durante 165 (ciento sesenta y cinco) días, ascendente á la suma de ($462) cuatrocientos sesenta y dos dollars.

Desde luego que, visto el caso bajo este aspecto, quedan los demandantes con derecho á establecer una nueva acción por los daños y perjuicios que hayan podido sufrir desde el 24 de abril de 1906, fecha en que se supone haber sido presentada la demanda en este caso.

El presente caso se ha estado considerando por largo tiempo, debido á las muchas cuestiones presentadas y que surgen de los autos, muchas de las cuales han sido omitidas en esta opinión, pero todas estas cuestiones han sido cuidadosamente estudiadas y ampliamente discutidas y consideradas. Sin embargo, se hace innecesario revisar más la ley y los hechos en relación con las mismas, debido á las limitaciones impuestas por la sección 295 del Código de Enjuiciamiento Civil anteriormente citado, discutido é interpretado.

Por consiguiente, la sentencia de la corte inferior debo modificarse y reformarse, según se indica en esta opinión.

*Resuelto de conformidad.*

Jueces concurrentes: Sres. Presidente Quiñones y Asociados, Hernández, Figueras y Wolf.